Precision Shooting  Next case is number 055157, Palmer v. Precision Shooting, Ms. Wilson. Good morning, Your Honors. Suzanne Wilson of Jekyll Fleshman for Appellant Charles Palmer. May it please the Court. Before addressing the issue of Mr. Palmer standing to assert the claims in this action, I would like to address the Glitch v. Koch engineering case and explain why the Glitch case is not determinative of the issues before the Court. First, the Glitch case is distinguishable both procedurally and factually from this case. In Glitch, the second action was commenced after an order on liability had been entered in the first action. Also in Glitch, the proposed answer in the first action and the complaint in the second action involved affirmative defenses to liability that had already been determined. In other words, Glitch was attempting to split the claims and the defenses to those claims into two separate actions, which had the effect of trying to vacate the finding of liability in the first case, or at least trying to avoid an award of damages in that action. And thirdly in Glitch, the appeal of the order denying leave to amend would have made Glitch whole. Simply, Glitch was trying to do an end run around the Court's order. By contrast, in this case, Mr. Palmer is not trying to do an end run around any order. First and foremost, the denial of leave to amend was made more than two months after this action was commenced. So this isn't a case where Mr. Palmer was trying to collaterally attack a ruling. Second, this action involves independent claims for damages. The first case, the first action, deals with Mr. Palmer's conduct and allegations of infringement. The claims in this action deal with the conduct of PSC and its officers. Third, unlike Glitch, an appeal of the first action in this case will not make Mr. Palmer whole. In that regard, this action asserts additional claims beyond the scope of the claims asserted in the first action. The first action, the proposed answer included a claim for inequitable conduct and antitrust. This case includes a claim for inequitable conduct, antitrust, RICO, and fraud in the inducement. Secondly, an appeal on the two limited issues in the first action would not give Mr. Palmer full recovery on his claims. The patents at issue in this case were the first one issued in 1988. The wrongful enforcement has been going on since that time. Since 1988, key evidence has been destroyed through time. We're not alleging any spoliation on behalf of the defendants' appellees in this case. It's just the passage of time has really weakened any claims Mr. Palmer would have. For example, one of the key witnesses as to the inequitable conduct has passed away. The attorney that prosecuted the two patents in suit from 1982 through 1991 is deceased. Another key witness, an employee at PSC that had knowledge of the inequitable conduct at the time that PSC acquired the patents, he's missing. He's somewhere in Mexico and we haven't been able to find him. There is no trial date, as far as I understand, no firm trial date even set in the first action right now. So it's anybody's guess when an appeal would even be heard of the motion for leave to amend, let alone by the time that order gets reversed, only a portion of Mr. Palmer's claims would be heard and the evidence as to those claims would continue to be stale. Second, Glitch is distinguishable because the three policies that this court cited in Glitch as important aspects of federal procedure are not violated by having this case go forward. Again, Glitch involves splitting a claim from its affirmative defense in violation of the rule that litigation related to a single matter take place in a single action. The litigation here is not related to a single matter. These are affirmative damages claims asserted by Mr. Palmer, inequitable conduct, antitrust, RICO, and fraud, which are distinct from the claims in the patent infringement action. Again, those claims involve Mr. Palmer's conduct. The claims in this action involve PSC's conduct and the conduct of its officers. Second, this is not, again, a collateral attack on the court's order denying the motion for leave to amend. This case, the motion hadn't even been reviewed when this action was commenced, so this wasn't about playing games or using different tactics. It's about preserving and pursuing Mr. Palmer's affirmative damages claims. And finally, this isn't an interrogatory... Procedurally, in the first action, there was a motion to amend. That's correct. Which was filed first before the second action was filed, correct? That's correct, it was filed first. And had there been an opposition to that motion filed prior to the time the second action was filed? I don't believe it had been filed at that time. I see. I don't believe so. Okay. But the second action involved, among other things, invalidity, declaratory judgment, invalidity, and inequitable conduct, right? And unenforceability. Which, of course, would be defenses in the first action. They would be defenses, but they involve a different set of operative facts than the claims at issue in the first action. Well, would you say that's true across the board, then, that just as a general matter, a declaratory judgment of patent invalidity... Take a simple case. One patent, one claim is asserted by a patentee against an accused infringer. The accused infringer wants to file some kind of action challenging the validity of that claim. Is that, in your view, a compulsory counterclaim in the first action? I think it could be considered one, but I think our case is a little bit different because it's not just raising a defense. It's also seeking damages based on those claims. Well, there are other claims involving assertions of damages. With respect, just starting just with the invalidity and inequitable conduct, is that a compulsory counterclaim? I think it's a permissive counterclaim. I don't think it's compulsory. And I do think there is a distinction when you're asserting actual damages claims, as we are in this case. And I also think there's something to be said about having all four claims be heard together in one action rather than parsing them out. Well, one could say the same thing about having all of the claims, the affirmative claims and the counterclaims, the claims all heard in a single action. I think that's somewhat odd to have a patent infringement action proceeding and then, for example, get a judgment and then later come back with a claim that the patent is invalid and have that judgment overturned by a separate proceeding. I don't know that the judgment would have to be overturned as much as it would be a different judgment. Well, it would be a different judgment. The effect of which would be that the plaintiff take nothing, correct, if the defendant prevailed on the claim of invalidity. Technically, if Mr. Palmer were found liable in the first action for infringement, he would have to answer in damages for that. In the second case, PSE and his officers would answer for damage as a result of their attempted enforcement of patents that are found to be invalid and unenforceable. There's a third reason why Glitch is distinguishable from this case. In Glitch, there was no reason for a separate action. There wasn't an argument before the court that Glitch could not obtain a just adjudication of its rights. That claim is present in this case. Equity dictates that Mr. Palmer be allowed to proceed with his claims. These are valid claims. The court in the first action acknowledged the validity of these claims, and Mr. Palmer has a right to have them heard. He cannot obtain a just adjudication of his rights in the first action. The proposed answer in that action only dealt with two out of the four claims, and given the staleness of the evidence, by the time again that action gets around to having an appeal on the leave to amend order, the evidence will be even more stale than it is now. And I just want to go back to your question, Your Honor, when you talk about the ordinary patent case. The facts of this case are a little bit different when we talk about the first action. The precision shooting equipment, PSE, had sued not only Mr. Palmer for inducing infringement, but also two corporate defendants for infringement of the patents and sued in that case. The corporate defendants filed for bankruptcy in April of 2002. Thereafter, the action was stayed for some time trying to sort out who was doing what with respect to the bankruptcies. And in the fall of 2003, the parties in the court decided to move forward on the claims with respect to the inducing infringement claims as to Mr. Palmer and the infringement of the patents issue. Discovery at that point was bifurcated in order to deal with those claims and any defenses as to the validity of the patents, any defenses that Mr. Palmer would need to raise would occur after a decision was rendered for summary judgment on the issue of Mr. Palmer's liability for inducing infringement. The decision on that motion came down, I believe, in September of 2004. Thereafter, the parties engaged in Discovery beginning in October 2004 on the defenses that were noted in the answer at that point. And at that stage uncovered a slew of evidence as to PSE's conduct and the conduct of its officers that necessitated the motion for leave to amend. That was made in December of 2004. Even after that motion was made, Discovery continued and it was discovered that there was a basis also for the RICO claims and the fraud and the inducement. That's what prompted a second action to be commenced to pursue all four claims together with respect to Mr. Palmer's damages claims. Okay, we'll save you rebuttal time. May it please the Court, Your Honors, I'm Marvin Glaser. I'm here representing Precision Shooting Equipment. With regard to the glitch case, I'm a little embarrassed that I didn't find it when preparing our brief. But having reviewed it, I think that it's certainly dispositive of the declaratory judgment claim for inequitable conduct and also for antitrust. I think that counsel has told you that those were two claims or perhaps a defense and a claim that were presented within the proposed amended answer and counterclaims that were part of the motion for leave that was presented to Judge Kavakovich in the original infringement action that was initiated in March of 2000. We did file an opposing brief to the motion for leave in the district court. My notes indicate that our opposition was filed before the separate action was filed in 2005. In any event, if glitch stands for the proposition that you should not collaterally attack a decision by one judge by filing a separate action, certainly it would seem that that would apply even more so if you file a motion for leave and then don't wait for the district court to decide that motion and go ahead and file the separate action because you're concerned that perhaps you won't get the result that you want. And I think that is what happened in this case. The motion for leave was filed on December 14th of 2004. The new action was filed on February 17th of 2005. And the motion for leave was denied by an order dated April 26th of 2005. I think that the glitch versus Coke case states an overriding principle, which is that issues should not be decided in a piecemeal fashion by several courts. They should be decided by a single court. If you're not happy with the decision that that single district court gave to you, then you should appeal that decision when the time for appeal occurs. So again, I think that the fact that Judge Kavakovich decided that the defense of inequitable conduct, the claim for antitrust, was presented too late in time, long after the facts cited in support of those claims had been discovered in the original patent infringement action, clearly Judge Kavakovich said, no, you dragged your feet. When we say equity demands that Mr. Palmer be able to have his claims heard, he could have had those claims heard. You say long after the facts were discovered or long after the close of the discovery period? No, no. It was well before the discovery period closed. Most of the facts on which the alleged antitrust and RICO and inequitable conduct claims are based, those facts were developed in 1997, 1998, when precision shooting equipment sued high country archery. All of the depositions from that case were provided to opposing counsel in 2002. Sorry, but do I hear you saying that as soon as you come upon in the course of discovery another possible cause of action, you must immediately proceed with the appropriate steps to counterclaim or amend your complaint or whatever else might change the pleadings? I think if the court sets a deadline for amending pleadings. Was there such a deadline? Yes, and it wasn't followed. While discovery was ongoing? Yes. Don't forget discovery when it's in pieces. Doesn't the period for the close of discovery generally precede the deadline for amending the pleadings? Very often it does not. Very often district court judges in their scheduling orders will set deadlines for filing motions for leave to amend. But in that case, there's almost no choice. There's no alternative to filing a separate action. And that, I think we all agree that judicial economy and the interests of the parties and all else favor resolving all issues in the same case. I agree. They do favor resolving all the issues in the same case. Here, the facts which were the basis for the inequitable conduct, antitrust, RICO, all of that was known to the defendants in the patent infringement action, certainly by 2002. And they did not take any action. There was bankruptcies flying here and there. And I think that people were hoping, well, the case is going to go away. And so we don't need to take any action. But we filed an opposing brief. Judge Kavakovich was convinced by our arguments. And she held that the defendants had waited too long and that their motion for leave to amend was tardy. Now, Consul has argued that, well, there were only two of the four claims presented in the motion for leave to amend. First of all, all of the claims presuppose necessarily that the patents are invalid. And the validity of the patents is an issue which should be decided in the original patent infringement action. And there was a claim of a defense of invalidity asserted in that action. Let's let that action proceed and decide that issue. What if the district court had granted the leave to amend? You'd have two actions going on the same issues, right? No. If the district court had granted the leave to amend, there would just be a single action, the one that was filed in the year 2000, the patent infringement action. And in addition, there would be additional defenses and counterclaims. You're not under the sequence of events that occurred in this case. Yeah, I'm saying you've got the D.J. pending and he grants the leave to amend. You'd have two pending cases with the same issues. And maybe if you're a smart litigator, you take two shots at the same target. To use an archery analogy. But I think that's precisely what the glitch case says should not be happening. We should let the first court decide that. Is it clear to you that the claims that were raised in the second action are all compulsory counterclaims? I believe that they are. There's not a lot of law on this so far as I can tell, oddly. Do you have anything that you can point us to that would just slam the door on that question? Well, I think we cited a case in our brief, particularly on the issue of inequitable conduct and declaratory judgment for invalidity. And that those are mandatory counterclaims. And if you'd like, I can help. But I would refer you to the brief in that regard. You know, I don't think there's any question that had Appellant Palmer thrown in the Rigo claim and the claim for common law fraud regarding the 1997 patent cross-license, I can't believe that Judge Kavakovich would have allowed those to come in by way of an amended pleading when she had already denied the antitrust and inequitable conduct. And I think it would be an unfair result if the Rigo or fraud survived in a collateral action merely because they were omitted from the proposed amended pleading. But if there is indeed a Rigo cause of action, you're saying, what, it can never be heard? No, I'm not saying it can never be heard. I'm saying it should have been presented in a timely fashion in the original infringement case, and it wasn't. And indeed, the party that should have presented it would have been Golden Eagle Industries, the competitor in the industry, not Mr. Palmer, who was not a competitor in the industry and who did not suffer, certainly did not allege in his second complaint that any of these predicate acts were directed against him. So in your view, what would have been a proper sequence of events with a timing of the discovery of, let's say, the late discovery of relevant facts for Rigo, for example? OK, I don't really think that the facts alleged in support of the Rigo claim. Let's assume that the facts that adequate a prima facie case is unearthed, but late in the discovery period. OK, then in that case, I think that those facts should have been presented in the motion for leave. And if the motion for leave was denied, that would be part of the appeal after the case has been tried. You're going to have to help me a little. I'm sorry. No, I'm thinking. I'm thinking. Proceed. You're going to have to help me on the case that you cited in your brief. You say that it stands for the proposition that a invalidity or declaratory judgment – invalidity or inequitable conduct declaratory judgment is a compulsory counterclaim. Right. I see that you've cited a case with a proposition that failure to assert compulsory counterclaims at a proper time bars assertion of claims. So that's Hornbook law. Right. What's the – you have a case of ours that says that compulsory counterclaim includes a declaratory judgment of invalidity. I don't know that I can cite you a case with those specific facts, although I believe – Well, that's this case. I believe there certainly are cases where it's the other way around. Somebody files a declaratory judgment action. The patent owner does not counterclaim for infringement, and then they are not permitted to assert a separate infringement action because that would have been a mandatory counterclaim. Well, can you – you say there are cases like that. Yes. Do you have one of ours that you can point me to that you've got at your fingertips? Not at my fingertips. I don't know. I'm sorry. Because I – that struck me as somewhat surprising that there don't seem to be – there doesn't seem to be a lot of law on that from our court, but there are a few cases from the prior regime when the regional circuits handled patent law. But accepting that that's the case, generally on the theory that they do arise from, if not completely coextensive operative facts, nonetheless that there are such powerful relationships after all, a declaratory judgment for invalidity can't be brought unless there's already a charge of infringement. That's the basis for the declaratory jurisdiction. Yes. Or at least the charge of infringement, yes. But you can't say that about the antitrust or fraud or RICO actions. So as to whether they are or aren't compulsory I think is really an open question. It might very well depend on the particular facts of the case, but it does seem, although there is a logic in what you say, that we are going in a direction in which legitimate claims are properly not permitted to be brought and then properly deemed stopped, which does not look to me like the path to a generally just exposure of the issues. I see your point, Your Honor. On the other hand, when the separate claims are all based upon alleged invalidity of the patent and alleged... Well, we don't know. The RICO claim or the influence with the licensees, one might have a defense that you can't license an invalid patent, but that's secondary. The facts would not be the same. Well, the facts were known to the infringement defendants in this case. They knew who Precision Shooting Equipment had licensed. They knew what the inventor had said at his deposition five years before, and what the inventor's patent attorney had said at his deposition five years before when he was still alive. And, you know, we talked about the fact that the evidence is getting older and more difficult to preserve. All the more reason those claims should have been brought at the time that they were known. They all centered on the validity of the patents. That was an issue in the infringement case. Defendant Palmer and the other defendants made it an issue in the infringement case. That was the time to present it. Okay. Anything else we need to know? Well, in 13 seconds, probably, probably not. But thank you for your time. Thank you, Mr. Glazer. Ms. Wilson? Ms. Wilson, I was just looking back at Judge Kavakovich's order. She says defendants possessed the requisite information needed to seek leave to amend in 2002. Defendants further failed to show that they received any substantial new information from Mr. Nerny's 2004 deposition. It goes on to say, for this reason, she denies your claim. If you had all the information, isn't the judge correct? I don't believe so, Your Honor. First, we didn't have all of the information. Well, but this is a finding. We're a little bound by it. It doesn't mean it was correct. But even if it was correct, the way discovery was bifurcated in the case, we hadn't even reached that portion of the case. The only issues before the court up until October of 2004 were infringement and Mr. Palmer's liability for inducing infringement. We hadn't turned to any of the other issues in the case with respect to defenses of validity or unenforceability of the patents. It seems wholly unfair to penalize Mr. Palmer for not conducting additional discovery on that. Does litigation usually proceed one issue at a time, or do you add to you? Not ordinarily, certainly not in a patent infringement case. But in this case, given the unique position of the bankruptcies with the corporate defendants, and the fact that there really was no basis for the claim of inducing infringement against Mr. Palmer, it was the design to first move as to his liability and end the case with respect to Mr. Palmer. And then if that was unsuccessful, look at the case as a whole and go that way. That was the decision reached with the court in opposing counsel and the way discovery happened. Well, if that was the case, why didn't the court make reference to that instead of? I don't know. Finding expressly that you had every opportunity to raise it several years earlier and didn't. Honestly, Your Honor, I don't know. And we would take issue with that in an appeal of the first action. I think there were a lot of decisions there that perhaps were not the best legally reasoned decisions. But for this case, Mr. Palmer should be allowed to pursue all four claims. There's a nexus between the claims. They're not compulsory counterclaims. They arise out of different operative facts. They're against different parties. They weren't known at the time the answer was interposed in the first action. Well, that's different from what the district judge says. But let me ask you the question that occurred to me when I really should have posed to you but occurred to me when your colleague was standing. What happens if the district judge had granted the leave to amend and you had the district and the DJ action as well? The actions could have easily been consolidated. There was no reason why they couldn't be consolidated. Well, but why would you have two actions pending on the same thing? Would you, same parties? Would you maintain the two and just take two shots? Maybe the other judge is more favorable. There is no intent here to take two shots at any apple or take two bites at any apple. Now I'm mixing up my metaphors. I don't know. Two shots at an apple sounds like archery illusion. William Pell. There was no intent. The intent here is to have Mr. Palmer's claims heard. There are affirmative damages claims that can be heard. It didn't matter whether it was. But the effect could have been to have two actions, two shots at the same apple. To the extent there would have been any inconsistent decisions, again, I would submit the actions could have been consolidated or whichever action a decision went forward in, that decision would be binding on the other action. Let me ask a variant on Judge Rader's question because his question interests me also. But let me change it up a little. Suppose that in the first action there had been a denial of your motion to amend. And suppose that that action had suddenly proceeded much more quickly and there had been an appellate decision upholding the denial of the motion to amend. And then you filed a new action. Would that new action be barred? That's a good question, Your Honor. I don't think in this case because the leave to amend order was not on the merits. In fact, the corporeal expressly acknowledged the validity of those claims. In addition, the claims in this action here are against different parties and they include more claims of wrongdoing by PSC and its officers. So it's really a different set of claims here. Okay. Any more questions? Thank you, Ms. Wilson. Thank you, Mr. Glazer. The case is taken into submission. All rise. The court has adjourned. There's a moment on it at 10 a.m. Thank you.